IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


MARY LEWIS on behalf of                                                                    PLAINTIFF
JOSEPH LEWIS
v.                                   NO. 3:06CV00189 WRW/BD

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,[1]                                                                DEFENDANT


PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

I.     **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Judge William R. Wilson, Jr.  Any party may file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date you receive the Recommended Disposition.  A copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

>    Clerk, United States District Court
>    Eastern District of Arkansas
>    600 West Capitol Avenue, Suite A149
>    Little Rock, AR 72201-3325

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007.  He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

**II.     Discussion**:

Plaintiff, Mary Lewis, has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income (SSI) on behalf of her nephew,[2] Joseph Lewis (Claimant).  Both parties have filed appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005); see also *Young v. Shalala*, 52 F.3d 200, 201-02 (8th Cir. 1995)(substantial evidence review in child benefits case).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore*, 413 F.3d at 721.

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.  *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The Commissioner found that the Claimant was not disabled within the meaning of the Social Security Act.  The only issue before this Court is whether the Commissioner's decision that Claimant was not disabled within the meaning of the Act is supported by substantial evidence.

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations,

---

[2] Plaintiff testified that she had gone to court and obtained permanent custody of Claimant. (Tr. 286, 292)

and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c (a)(3)(C)(i) (1996).

After conducting an administrative hearing, the Administrative Law Judge[3] (ALJ) concluded that Claimant had not been under a disability within the meaning of the Social Security Act at any time through April 26, 2006, the date of his decision. (Tr. 28) On August 18, 2006, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 5-7)

Plaintiff then filed her complaint initiating this appeal. (Docket #1) After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

At the time of the administrative hearing, Claimant was seven years old, and a student in the first grade. (Tr. 287) In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used which is comparable to the five-step sequential evaluation process utilized for adults. 20 C.F.R. § 416.924(a) (2005).

The first step is to determine whether the child is engaged in substantial gainful activity. *Id.*, § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step.

The second step involves a determination of whether the impairment or combination of impairments is severe, *i.e.*, more than a slight abnormality that causes no more than minimal functional limitations. *Id.*, § 416.924(c). If not, benefits are denied; if so, the evaluation continues.

---

[3]The Hon. William R. Ingram.

The third step involves a determination of whether the child has an impairment, or impairments, that meet, medically equal or functionally equal in severity a Listed impairment. *Id.*, § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

The ALJ found that Claimant had never engaged in substantial gainful activity. (Tr. 18) He determined that Claimant did have "severe" impairments, attention deficit hyperactivity disorder, and asthma, but that he did not have any impairment or combination of impairments that met or medically equaled a Listing or that functionally equaled a Listed impairment. *Id.* Consequently, he found that the child was not disabled. *Id.*

Because the Claimant had "severe" impairments that did not meet or medically equal a Listing, the ALJ was required to determine whether the impairments functionally equaled a Listing. 20 C.F.R. § 416.926a(a) (2005).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the Welfare Reform Act), P.L. 104-193, 110 Stat. 2105 (codified in scattered sections of 42 U.S.C.), required implementing regulations. One significant change that the final regulations made from the interim final regulations is the manner of determining functional equivalence. There is now a single method of evaluating functional equivalence based only on domains of functioning. Under this regulation, an impairment is functionally equivalent to a Listing when the impairment results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. *Id.*

A "marked" limitation in a domain seriously interferes with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2) (2005). It also means a limitation that is "more than moderate" but "less than extreme." *Id.* It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.*

4

An "extreme" limitation in a domain very seriously interferes with a child's ability to independently initiate, sustain or complete activities.  20 C.F.R. § 416.926a(e)(3) (2005).  "Extreme" limitation also means a limitation that is "more than marked."  *Id.*  It is the rating given to the most serious limitations.  *Id.*  It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean.  *Id.*

The domains of functioning are:

1) Acquiring and using information;

2) Attending and completing tasks;

3) Interacting and relating with others;

4) Moving about and manipulating objects;

5) Caring for oneself; and

6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i-vi) (2005).  These domains are described in greater detail, with examples, in the regulations.  20 C.F.R. § 416.926a(g)-(l) (2005).

The ALJ found that Claimant had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being.  (Tr. 21-27)  He found no limitations in the domains of moving about and manipulating objects and the Claimant's caring for himself.  (Tr. 25-27)

Plaintiff takes issue with the ALJ's findings in the domains of acquiring and using information and attending and completing tasks.  (Br. 4)  She does so primarily on the basis of two letters that were submitted to the Appeals Council after the ALJ's decision.  (Br. 4-6)  As previously noted, the ALJ's decision is dated April 26, 2006.  (Tr. 28)  The first of the

two letters[4] in question is a to-whom-it-may-concern letter dated May 8, 2006, from Don McDonald, M.D., which states:

> Joseph Lewis has been a patient of mine since March 31, 2004 after being referred to me by a psychiatrist in Little Rock. His biological mother used multiple drugs during her pregnancy with Joseph. He was currently taking Adderall for attention deficit hyperactive disorder (ADHD). He was stable at first but required increasing amounts of Adderall until we gave up and changed him to Strattera and Abilify. Again this required increasing amounts of medicine. A trial of Concerta also failed before placing the child on Foculin. This dose was also increased to the maximum recommended level but Joseph continued to act up. Finally, when placed on the mood stabilizer Depakote, he began to calm down and act more appropriately.
>
> Without his medicine Joseph is extremely impulsive and aggressive, to a greater extreme than what you would expect for ADHD. Without his meds, he urinates in public, turns over tables when angry, and is constantly eating off the ground.
>
> I changed his diagnosis to Bipolar, manic on 3-6-06. Mrs. Mary Lewis asked me to send you this information after being turned down for disability. From what I have seen, it seems that Joseph was evaluated with the assumption he was ADHD. Even though it is unusual for a child this young to be considered bipolar, the above history of extreme behavior, his mother's drug use during her pregnancy, and his improvement on the mood stabilizer, Depakote, warrants a reconsideration.

(Tr. 281)

As noted, the ALJ found that Claimant had "less than marked" limitation of function in the domain of acquiring and using information. (Tr. 22) That regulation, in pertinent part, reads as follows:

> (g) *Acquiring and using information.* In this domain, we consider how well you acquire or learn information, and how well you use the information you have learned.
> (1) *General.* (i) Learning and thinking begin at birth. You learn as you explore the world through sight, sound, taste, touch, and smell. As you play, you acquire concepts and learn that people, things, and activities have names.

---

[4] The other letter is an October 6, 2005, to-whom-it-may-concern letter from Claimant's first-grade teacher of approximately one month. (Tr. 280) It basically says that Claimant is a sweet child who craves attention and has difficulty focusing. *Id.* It was created months before the administrative hearing, but not introduced at that time.

This lets you understand symbols, which prepares you to use language for learning. Using the concepts and symbols you have acquired through play and learning experiences, you should be able to learn to read, write, do arithmetic, and understand and use new information.

(ii) Thinking is the application or use of information you have learned. It involves being able to perceive relationships, reason, and make logical choices. People think in different ways. When you think in pictures, you may solve a problem by watching and imitating what another person does. When you think in words, you may solve a problem by using language to talk your way through it. You must also be able to use language to think about the world and to understand others and express yourself; *e.g.*, to follow directions, ask for information, or explain something.

(2) *Age group descriptors.*

. . . .

(iii) *Preschool children (age 3 to attainment of age 6).* When you are old enough to go to preschool or kindergarten, you should begin to learn and use the skills that will help you to read and write and do arithmetic when you are older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you. All of these are called "readiness skills," and you should have them by the time you begin first grade.

(iv) *School-age children (age 6 to attainment of age 12).* When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

. . . .

(3) *Examples of limited functioning in acquiring and using information.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; *e.g.*, an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

> (i) You do not demonstrate understanding of words about space, size, or time; *e.g.*, in/under, big/little, morning/night.
> (ii) You cannot rhyme words or the sounds in words.
> (iii) You have difficulty recalling important things you learned[ ]in school yesterday.
> (iv) You have difficulty solving mathematics questions or computing arithmetic answers.
> (v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a (2005).

In finding that Claimant had "less than marked" limitation in the domain of acquiring and using information, the ALJ noted:

> Though the claimant has tested in the low average range, the evidence shows that he suffers from an attention disorder that could disrupt his academic achievement. There are no academic reports showing that has happened, but at least one teacher has indicated that something was blocking his learning. There is no evidence that the claimant has been placed in special education, and none of his treating specialists have noted cognitive limitations. The record also shows the claimant's functioning improved with medication, and his aunt stated at the hearing that his medications helped.

(Tr. 22)

In addition to the evidence that was before the ALJ, the Appeals Council also had the benefit of Dr. McDonald's letter.

> When new and material evidence is submitted to the Appeals Council, [t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b). The newly submitted evidence is to become part of what we will loosely describe here as the "administrative record," even though the evidence was not originally included in the ALJ's record. *Browning v. Sullivan,* 958 F.2d 817, 823 n. 4 (8th Cir. 1992). If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material. See *Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir. 1990). If, as here, the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision. *Browning*, 958 F.2d at 823.

*Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir. 1992)(footnote omitted).

Dr. McDonald's letter does not advance Plaintiff's case for Claimant's disability. In part, his letter reported that, without medication, Claimant was extremely impulsive and aggressive. (Tr. 281) That is a moot point, since Claimant was not without his medication during the relevant time period. In part, the letter reported on a series of medications, finally the mood stabilizer Depakote, with which "he began to calm down and act more appropriately." *Id.*

Dr. McDonald indicated that he changed Claimant's diagnosis to bipolar, manic, on March 6, 2006, and that Plaintiff asked him to send this information after being turned down for disability. *Id.* Although the March 6 report is not a part of the record, there is a report dated April 5, 2006, noting an Axis I diagnosis of bipolar. (Tr. 276) It notes Claimant's medications as Depakote and Foculin[5] and comments "much better."[6] *Id.* Dr. McDonald also commented that, from what he had seen, Claimant was evaluated under the assumption that he had attention deficit hyperactivity disorder, and the evaluation warranted reconsideration. *Id.* A fair reading of the ALJ's decision was that he evaluated Claimant's ability to function, rather than focusing on a diagnosis. The ALJ properly focused on Claimant's ability to function despite his impairment, rather than on a diagnosis. *Anderson v. Apfel*, 996 F.Supp 869, 873 (E.D. Ark. 1998). An impairment is not disabling per se; there must be a functional loss establishing an inability to engage in substantial gainful activity before disability occurs. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). In

---

[5]Apparently, Claimant was on spring break and could not obtain his Foculin. *Id.* The note indicated that he needed both medications. *Id.*

[6]The ALJ specifically mentioned the Claimant's improvement and change of medication: "The claimant's treating psychiatrist indicated that his attention and concentration were normal while on medications, and his last note of April 5, 2006 shows the claimant was doing much better with a change of medication." (Tr. 23)

addition, substantial evidence supports the ALJ's conclusion that Claimant's medications controlled his impairment. If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993). Substantial evidence supports the ALJ's conclusion that Claimant had "less than marked" limitation in the domain of acquiring and using information.

Plaintiff also argues that Claimant suffered from greater limitation than the ALJ found in the domain of attending and completing tasks. (Br. 4-6)

> (h) *Attending and completing tasks.* In this domain, we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them.
> (1) *General.* (i) Attention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it.
> (ii) Adequate attention is needed to maintain physical and mental effort and concentration on an activity or task. Adequate attention permits you to think and reflect before starting or deciding to stop an activity. In other words, you are able to look ahead and predict the possible outcomes of your actions before you act. Focusing your attention allows you to attempt tasks at an appropriate pace. It also helps you determine the time needed to finish a task within an appropriate time-frame.
> (2) *Age group descriptors.*
> . . . .
> (iii) *Preschool children (age 3 to attainment of age 6).* As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.
> (iv) *School-age children (age 6 to attainment of age 12).* When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be

> able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.
> . . . .
>     (3) *Examples of limited functioning in attending and completing tasks.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; *e.g.*, an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
>         (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
>         (ii) You are slow to focus on, or fail to complete activities of interest to you, *e.g.*, games or art projects.
>         (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
>         (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
>         (v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h) (2005).

In considering Claimant's limitations in the domain of attending and completing tasks, the ALJ noted:

> The claimant has been diagnosed with attention deficit hyperactivity disorder and almost all psychological sources agree that he suffers from it to some degree. He is also taking medication, and the evidence shows that it is largely effective when taken appropriately. In fact, Dr. Caperton found him so well adjusted that she stated he had only a mild concentration problem. The claimant's treating psychiatrist indicated that his attention and concentration were normal while on medications, and his last note of April 5, 2006 shows the claimant was doing much better with a change of medication. Because his teachers have expressed concerns with the claimant's completing class[]work and staying seated, the Administrative Law Judge finds some less than marked limitations. However, the evidence is overwhelming that medication is a mitigating factor.

(Tr. 23)

Substantial evidence in the record as a whole supports the ALJ's conclusion that Claimant had "less than marked" limitation in the domain of attending and completing tasks.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. E.g., *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; see also *Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

### III. Conclusion:

For these reasons, the Court hereby recommends that the District Court affirm the final determination of the Commissioner and dismiss Plaintiff's complaint with prejudice.

DATED this 27th day of November, 2007.

_____
UNITED STATES MAGISTRATE JUDGE